WILLIAM GELINAS ET AL. *v.* TOWN OF WEST
HARTFORD ET AL.
(14351)
(14413)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and KATZ, Js.

Argued December 1, 1992—decision released May 25, 1993

*Paul S. Levin,* for the appellants in Docket No. 14351, appellees in Docket No. 14413 (plaintiffs).

*Elizabeth Dee Bailey,* assistant corporation counsel, for the appellee in Docket No. 14351, appellant in Docket No. 14413 (named defendant).

CALLAHAN, J. The plaintiffs, William P. Gelinas and Morton Weiner, challenge the trial court's refusal to issue a writ of mandamus directing the defendants, the town of West Hartford and its town planner, Donald Foster, (town), to grant their site plan application for premises known as 115-121 Park Road, West Hartford. Gelinas also challenges the propriety of the trial court's injunctive and penalty orders. In its appeal, the town challenges the refusal of the trial court to grant certain injunctive relief against Gelinas.[1]

In their appeal, the plaintiffs jointly claim that the trial court improperly concluded: (1) that the town's failure to render a decision on their site plan application did not result in automatic approval of their application pursuant to General Statutes §§ 8-3 (g) and 8-7d; (2) that the plaintiffs were not entitled to a writ of mandamus directing the town to grant their site plan application; and (3) that an injunction should be issued against Gelinas because there was insufficient evidence that the uses of the subject property enjoined were illegal or, in the alternative, because the town was estopped from seeking an injunction because it had issued various permits for work in areas in Gelinas' building that the town contended had been put to illegal uses. In his amended appeal, Gelinas claims that the trial court improperly denied his motion to open and correct the judgment regarding the defendants' counterclaim. Specifically, Gelinas contends that the

---

[1] The parties appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

trial court improperly: (1) assessed a daily fine for wilful violation of zoning ordinances pursuant to General Statutes § 8-12; (2) computed the time period during which it assessed the daily fine; and (3) issued an injunctive order overly broad in its scope and application. On the plaintiffs' appeal, we affirm the judgment of the trial court on all issues except its assessment of daily fines for wilful violation of the West Hartford zoning ordinances. We remand this case to the trial court to vacate the fines and to determine whether to assess civil penalties pursuant to § 8-12.

The town's appeal challenges the trial court's denial of a request for an injunction against a change in the use of the basement of Gelinas' building. We agree with the town on that issue, reverse the judgment of the trial court, and remand the case to the trial court for further proceedings regarding the town's request for an injunction against a change in the use of the basement.

I

THE PLAINTIFFS' APPEAL

Since December, 1986, Gelinas has owned a two-story building, located at 119-121 Park Road, West Hartford, that had formerly been owned by a fraternal organization and used for large indoor meetings and events. During the early part of 1987, he made alterations to the building including the removal of a first floor assembly hall stage and the construction of two floors of offices in place of the stage and a part of the assembly hall. Thereafter, on June 24, 1987, Gelinas applied for a building permit to make changes to the interior of the building. Believing that the proposed changes constituted a change in use, town officials inspected the property and discovered that much of the work for which a permit was sought had already been completed and was in violation of the zoning ordinances and the

building code.[2] Town officials thereupon posted "do not occupy" and "stop work" orders at the site, notified Gelinas that he was in violation of the zoning and building codes and that he must obtain site plan approval, permits and inspections, initiated a prosecution for the building code violations in the housing court, and ordered Gelinas to return the property to its prior condition. Gelinas subsequently was arrested for the building code violations and, on January 21, 1988, the housing court granted him accelerated rehabilitation. As a condition of accelerated rehabilitation, Gelinas was required, within two years, either to obtain site plan approval and building permits for the changes to the building or to return the property to its condition as of January, 1987. Although no finding was ever made

[2] As supervisor of inspections, Charles J. McCarthy served as the building inspector and the zoning enforcement officer for the town. In his capacity as the town's building inspector, McCarthy inspected the site on June 25, 1987. He based his subsequent orders to stop work and not to occupy on §§ 177-38 and 177-41 of the West Hartford Code. Section 177-38 provides in relevant part: "No structure shall be erected, expanded or structurally altered and no land use shall be established until a permit therefor has been issued . . . ." Section 177-41 provides in relevant part: "All applications for required permits shall be made to the Building Inspector on forms provided by his office. . . . An application for a building permit or zoning permit shall include the following: (1) . . . a plot plan . . . drawn to scale . . . showing . . . (c) The existing and proposed use of all existing and proposed structures and lot areas, if other than a one- or two-family residence. . . . (2) Such additional information as required by the Building Inspector or by the Planning Director or Commission where a . . . site plan approval is required, where necessary to determine that the requirements of the Zoning Ordinance are met." The town asserts that the application lacked the required square foot use information so that the town planner could not calculate the off-street parking requirements specified in § 177-32I and was unable, therefore, to fulfill his responsibilities pursuant to § 177-42B (2) that the town planner shall "determine that the requirements of the Zoning Ordinances are met in fact."

The state building code is the building code for the town pursuant to General Statutes § 29-253. See Regs., Conn. State Agencies § 29-252-1a. Section 111.1 of the code prohibits the construction or alteration of a structure, or a change of use without first applying for and obtaining a permit. The town also invoked additional sections of the building code that are not pertinent to the resolution of the issues in this appeal.

that he had fulfilled either condition, the charges against Gelinas were eventually dismissed.[3]

Weiner owned property located at 115-117 Park Road. The town planning office received his application for site plan approval for a driveway repair on November 17, 1987. On the same date, the town received Gelinas' site plan application for regrading, repaving and storm sewer work at 119-121 Park Road. Thereafter, on February 29, 1988, the plaintiffs filed a revised site plan application covering their joint properties.

The revised site plan was not approved, denied or modified, and in June, 1990, the plaintiffs brought this mandamus action against the town.[4] In the mandamus action, the plaintiffs sought a certificate of zoning approval for their February 29, 1988 joint revised site plan application pursuant to §§ 8-3 (g)[5] and 8-7d,[6] which

---

[3] The trial court stated: "Apparently, there was a technical problem, as indicated by the testimony relative to the accelerated rehabilitation, where there was never really a finding made whether the conditions were met, and somehow because it didn't get listed on the calendar, it was dismissed, and there was not a judicial finding regarding the conditions of the accelerated rehabilitation being met."

[4] Section 177-42B (1) of the West Hartford Code provides that the town planner "shall approve, disapprove or approve with modification . . . proposed site plan[s] . . . within fifteen (15) days after having received the application. . . ."

[5] General Statutes § 8-3 (g) provides in relevant part: "The zoning regulations may require that a site plan be filed with the . . . municipal agency or official to aid in determining the conformity of a *proposed building, use or structure* with specific provisions of such regulations. . . . Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. A certificate of approval of any plan for which the period for approval has expired and on which no action has been taken shall be sent to the applicant within fifteen days of the date on which the period for approval has expired." (Emphasis added.)

[6] General Statutes § 8-7d provides in relevant part: "(a) Except as provided in subsection (b) of this section, in all matters wherein a formal petition, application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter and a hearing is required on such petition, application, request or appeal, such hearing shall commence within sixty-five days after

provide that a site plan is presumed to be approved unless a decision to deny or modify it is rendered within sixty-five days after receipt of the application.[7] In an extensive oral decision, the trial court denied the relief sought by Gelinas and Weiner.

The town had filed a counterclaim in the mandamus action alleging that Gelinas had altered the building without first obtaining site plan approval and building permits, had used the building without first obtaining a certificate of occupancy, and had failed to comply with orders to discontinue or remedy the zoning violations.

receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. . . .

"(b) Whenever the approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations for a *proposed building, use or structure,* a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan. . . ." (Emphasis added.)

[7] Although Gelinas conceded that there had been correspondence between the town and himself concerning the November 17, 1987 site plan application, he claimed that the town had not issued a decision approving, denying or modifying his application. The plaintiffs complained jointly that they had received no decision on their revised application for a site plan and sought a writ of mandamus ordering the town to issue a certificate approving the site plan.

In its answer, the town raised numerous special defenses. The town asserted that: General Statutes § 8-3 (g) did not apply because the plaintiffs' applications were incomplete and thus unreviewable; General Statutes § 8-7d (a) did not apply because the applications were not submitted to a formal body for a hearing; § 8-7d (b) did not apply because other requirements at Gelinas' property were unmet; the plaintiffs had failed to exhaust their administrative remedies; the plaintiffs had an adequate remedy at law and, therefore, mandamus relief was not appropriate; the lack of conformity with zoning regulations precluded mandamus relief because the plaintiffs had no legal right to have the requested duty performed; even if the plans filed by the plaintiffs constituted a site plan application, the town planner had denied the application within fifteen days of submittal; the plaintiffs were guilty of laches by waiting for more than two years from the date of the site plan application to bring the mandamus action; and the town had the discretionary duty to determine that the requirements of § 177-42B (2) of the West Hartford Code were met.

Pursuant to § 8-12,[8] the town sought injunctive relief to restrain Gelinas from occupying the parts of the building that had been altered and an order that he: correct the building code violations; remove illegal alterations; pay a civil penalty of $2500, costs and attorney's fees; pay a fine of $100 per day from June 29, 1987, to the date that the zoning violations were corrected; and pay a fine of $250 per day from December 5, 1989, to the date that certain other wilful zoning violations were corrected.[9] In a written memorandum

[8] General Statutes § 8-12 provides in relevant part: "If any building or structure has been . . . altered, converted or maintained, or . . . used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful . . . alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure . . . or to prevent any illegal act, conduct, business or use in or about such premises. Such regulations shall be enforced by the officer or official board or authority designated therein, who shall be authorized to cause any building, structure, place or premises to be inspected and examined and to order in writing the remedying of any condition found to exist therein . . . . The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists . . . or the owner . . . who maintains any building or premises in which any such violation exists, *shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars nor more than two hundred and fifty dollars for each day that such violation continues,* or imprisoned not more than ten days for each day such violation continues or both . . . . Any person who, having been served with an order to discontinue any such violation, fails to comply with such order within ten days after such service . . . or continues to violate . . . such order shall be subject to a civil penalty not to exceed two thousand five hundred dollars . . . . In any criminal prosecution under this section, the defendant may plead in abatement that such criminal prosecution is based on a zoning ordinance or regulation which is the subject of a civil action . . . . If the court renders judgment for such municipality and finds that the violation was wilful, the court shall allow such municipality its costs, together with reasonable attorney's fees . . . ." (Emphasis added.)

[9] Gelinas raised five special defenses to the town's counterclaim. The trial court rejected his assertions that site plan approval had arisen by operation of law (General Statutes §§ 8-3 [g] and 8-7d); zoning approval had arisen by operation of law (§ 8-3 [g]); the building inspector had failed to approve

of decision, the trial court ordered much of the relief sought by the town.[10]

## A

The plaintiffs first claim that the trial court improperly concluded that the town's failure to render a decision on their site plan application did not result in automatic approval of their application pursuant to §§ 8-3 (g) and 8-7d. The plaintiffs contend that the decisions in *SSM Associates Limited Partnership* v. *Plan & Zoning Commission,* 211 Conn. 331, 335–37, 559 A.2d 196 (1989), and *Carr* v. *Woolwich,* 7 Conn. App. 684, 699–701, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986), control this case. We disagree.

The trial court found, in the instant case, that the alterations to the property had been made before Gelinas had applied for the required permits and also that he had failed to identify the actual and proposed uses of the property. He anomalously sought approval therefore of an application to allow alterations to a building that had already been extensively altered without the necessary permits and had been occupied without a certificate of occupancy. These circumstances distinguish the present case from *SSM Associates Limited Partnership* and *Carr,* and require that we consider for the first time the meaning of the word "proposed" as used in §§ 8-3 (g) and 8-7d (b).

or deny Gelinas' building permit applications within thirty days as required by § 112.1 of the state building code; the town had breached its implied agreement to act timely on permit applications submitted in connection with the grant of accelerated rehabilitation; and, the request for restoration was inappropriate because the structure was safe.

[10] The trial court enjoined Gelinas from using the altered parts of the building until he had obtained all necessary zoning and building authorizations, certificates and permits. The court further ordered Gelinas to remove some of the alterations unless he obtained necessary zoning and building permits and inspection approvals, to pay fines of $100 per day from June 29, 1987, the date on which he had been ordered to obtain site plan approval and building permits, to June 15, 1990, the date on which he had sought the writ of mandamus, for the wilful violation of zoning regulations pursuant to General Statutes § 8-12 by his unlawful alteration and use of the building.

"Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended." *All Brand Importers, Inc.* v. *Department of Liquor Control,* 213 Conn. 184, 194, 567 A.2d 1156 (1989). "No word or phrase in a statute is to be rendered mere surplusage." *Rydingsword* v. *Liberty Mutual Ins. Co.,* 224 Conn. 8, 16, 615 A.2d 1032 (1992). The use of the adjective "proposed" indicates that the legislature meant to distinguish planned structures, alterations or uses from structures, alterations or uses that have already been fully or significantly implemented. The use of the adjective "proposed" signifies that the building, use or structure involved in the application is forthcoming, as opposed to a building, use or structure that, as in this case, has already been significantly altered without the required building permits or zoning approvals. We are not persuaded that the legislature intended that §§ 8-3 (g) and 8-7d (b) mandate automatic approval of site plan applications filed after building alterations and changes in uses have already been significantly implemented without the required building permits or zoning approval.[11] Because the plaintiffs did not file a site plan application for "a proposed building, use or structure," we, therefore, agree with the trial court and conclude that the town's failure to render a decision on the plaintiffs' site plan application within the prescribed time limits did not result in an automatic approval of the application pursuant to §§ 8-3 (g) and 8-7d.[12]

---

[11] The plaintiffs contend that this result bars an applicant from ever bringing illegal current uses into compliance with zoning ordinances because current uses cannot be "proposed" uses and, therefore, is "clearly nonsensical." We reject this characterization. The plaintiffs' argument would inappropriately deprive responsible zoning officials or commissioners from obtaining the factual information upon which such approval should be predicated, and the argument would reward, with a guarantee of zoning approval, applicants who apply for permits after they have fully implemented changed uses.

[12] The plaintiffs cursorily advance alternative arguments that fail to persuade us. They claim that the involvement of the housing court did not take

## B

The plaintiffs next claim that the trial court improperly concluded that they were not entitled to a writ of mandamus directing the town to grant their site plan application. See General Statutes § 52-485 (a);[13] *Kosinski* v. *Lawlor*, 177 Conn. 420, 426–27, 418 A.2d 66 (1979). We disagree.

their site plan application out of General Statutes §§ 8-3 (g) and 8-7d. Yet, neither the plaintiffs' brief nor our review of the record discloses any evidence to indicate that the trial court construed the granting of accelerated rehabilitation to alter the usual administrative process governing site plan applications.

The plaintiffs briefly suggest, similarly, that there was no evidence of topical fraud or private mischief to which the trial court alluded in its oral decision. The trial court stated: "[T]he [Supreme] Court in [*M & L Homes, Inc.* v. *Zoning & Planning Commission*, 187 Conn. 232, 445 A.2d 591 (1982),] indicated that [mandamus] is a remedial process and may be issued to remedy a wrong, not to promote one, to compel the discharge of a duty which ought to be performed but not to compel the performance of an act which will work a public and private mischief or to compel a compliance with the strict letter of the law in disregard of its spirit or in aid of a topical fraud." We find no other reference to fraud or mischief or grounds to believe that the trial court referred to conduct other than the filing of an incomplete site plan application after the alterations had been completed.

The plaintiffs mention also that they did not waive the time limits set forth in §§ 8-3 (g) and 8-7d and that a finding of laches is inappropriate on the facts of this case. We find nothing in the record to indicate that the trial court relied upon a theory of waiver to support its findings and orders. In its oral decision, the trial court did refer to Gelinas' letter of July 25, 1990, that had requested a certificate of approval, but the court noted that it was untimely because it had been written after the mandamus action had been instituted. See footnote 14. It is clear from the transcript, moreover, that the trial court did not rely solely upon this finding. Thus, even assuming the plaintiffs' interpretation of the trial court's comments, their claim fails because the court relied also upon the incompleteness of an application for alterations that had already been completed by Gelinas, whom the court assumed to be knowledgeable of applicable regulations given the extent of his real estate holdings in West Hartford.

[13] General Statutes § 52-485 (a) provides: "The superior court may issue a writ of mandamus in any case in which a writ of mandamus may by law be granted, and may proceed therein and render judgment according to rules made by the judges of the superior court or, in default thereof, according to the course of the common law."

"Mandamus is an extraordinary remedy. It is designed to enforce a plain positive duty. The writ will issue only when the person against whom it is directed is under a clear legal obligation to perform the act compelled and the party seeking the writ has a clear legal right to the performance." (Internal quotation marks omitted.) *McAllister* v. *Nichols,* 193 Conn. 168, 171, 474 A.2d 792 (1984). "The[se] . . . requirements are concededly met, once the statutory language is determined to be mandatory." *Vartuli* v. *Sotire,* 192 Conn. 353, 365, 472 A.2d 336 (1984). We have concluded that §§ 8-3 (g) and 8-7d (b) "imposed a mandatory time frame of sixty-five days on local site plan approvals. Id., 359–62; see also *Carr* v. *Woolwich,* supra, 694–95." *SSM Associates Limited Partnership* v. *Plan & Zoning Commission,* supra, 335.

The plaintiffs contend that timetables provided in the land use statutes evidence the legislature's intent to protect the interests of applicants from abuses of municipal authority, such as the delays in the processing of the application in this case that allegedly subjected Gelinas to civil and criminal penalties. They argue that a writ of mandamus was the proper remedy for the town's failure to act within the prescribed time limits. The trial court found, however, that the application was incomplete because Gelinas had never provided the town with information as to the actual or proposed use of the property, and that he did not seek the certificate of approval in a timely manner, that is, before he did the work.[14] The trial court found further

[14] See footnote 12. The trial court stated: "The court in trying to pierce through all the circumstances, feels it almost can be summed up in the lines of a famous movie: What we have here is a failure to communicate. That's almost what it sounds like. It might also be stronger than that. It might even be that the failure to communicate has resolved into a dispute which may even have gotten into a feud between the parties. I'm not quite sure, but there is definitely a failure to communicate." See "Cool Hand Luke" (Warner Brothers 1967) (Strother Martin: "What we've got here is a failure to communicate.").

that the clean hands doctrine defeated the plaintiffs' request for a writ of mandamus. "One who seeks equity must also do equity and expect that equity will be done for all." *LaCroix* v. *LaCroix,* 189 Conn. 685, 689, 457 A.2d 1076 (1983).

In light of our conclusion in part I A that the plaintiffs' site plan application did not comply with the requirements of §§ 8-3 (g) and 8-7d (b), they have failed to establish the necessary predicate for their claimed entitlement to a writ of mandamus. We conclude, therefore, that the trial court properly refused to order the extraordinary remedy of mandamus.

## C

The plaintiffs next dispute the propriety of the injunction that the trial court issued against Gelinas pursuant to § 8-12 in rendering its judgment for the defendants on their counterclaim. The plaintiffs contend that: (1) there was insufficient evidence to support the trial court's finding that the uses to which the subject building had been put were illegal; or (2) in the alternative, the town was estopped from seeking an injunction because it had issued various carpentry, air conditioning and electrical permits for areas in the building that the town then maintained had been put to illegal uses. We disagree, and address each argument in turn.

### 1

The plaintiffs argue that the evidence was insufficient to support the decision by the trial court to grant the injunctive relief, pursuant to § 8-12, as requested by the town in the counterclaim.[15] We do not agree.

[15] See footnote 10. The trial court enjoined Gelinas from using the first and second floors of the property except for the uses that had existed pursuant to a 1925 building permit (the first floor store fronts and the second floor apartment), unless and until he had obtained all necessary zoning and building authorizations, certificates and permits. The court granted the defendant sixty days to comply with its order and retained jurisdiction to

In seeking an injunction pursuant to § 8-12, the town is relieved of the normal burden of proving irreparable harm and the lack of an adequate remedy at law because § 8-12 by implication assumes that no adequate alternative remedy exists and that the injury was irreparable. *Conservation Commission* v. *Price,* 193 Conn. 414, 429, 479 A.2d 187 (1984). The town need prove only that the statutes or ordinances were violated. Id. The proof of violations does not, however, deprive the court of discretion and does not obligate the court mechanically to grant the requested injunction for every violation. Id., 430. Although this court will generally refrain from interfering with a trial court's exercise of discretion; *State* v. *Martin,* 201 Conn. 74, 88, 513 A.2d 116 (1986); discretion is to be exercised "in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Hammerberg* v. *Leinert,* 132 Conn. 596, 604, 46 A.2d 420 (1946).

The zoning code of the town provides that no structure shall be expanded or structurally altered until a certificate of site plan approval has been issued. West Hartford Code § 177-38; see also § 177-6 (B) and (C). Additionally, no structure may be used or changed to another use until the building inspector has issued a certificate of occupancy, certifying that the zoning ordinances have been complied with in full, including any conditions attached to any site plan approval. West Hartford Code § 177-39. Section 177-41 of the zoning code specifies the content required in applications for zoning and building permits. Section 111.1 of the state

---

determine further injunctive orders and civil penalties that might be required for noncompliance. The trial court further ordered that Gelinas remove the two floors of offices within six months unless he had obtained the necessary zoning and building permits, and had opened the building to inspection by the building inspector.

building code provides in relevant part that "no building or structure shall be constructed; altered . . . have its use changed . . . until an application has been filed with the building official and a permit issued."

The trial court found that Gelinas had removed a stage and, in its place, added six offices, three on each of two levels of the subject building. The trial court found further that Gelinas had admittedly made the alterations and additions without first obtaining the requisite permits, thereby violating §§ 177-38 and 177-39 of the zoning code and § 111.1 of the building code.

We conclude that the trial court properly exercised its discretion in fashioning its orders for prohibitory and mandatory injunctive relief for violations of the building code that had occurred prior to the approval of a site plan application as required by law.

2

The plaintiffs argue in the alternative that the town was estopped from seeking an injunction because it had issued various mechanical permits for work in areas of the building that the town then maintained had been put to illegal uses.[16] The plaintiffs equate the permit approvals for work in specific areas of the building with zoning approval that would estop the town from obtaining injunctive relief.

---

[16] The town contends that we should not consider the plaintiffs' estoppel claim because it was not raised distinctly at trial, stated in their trial briefs, or pleaded in their answers. See Practice Book §§ 285A and 4185; *Swerdloff* v. *AEG Design/Build, Inc.*, 209 Conn. 185, 188–90, 550 A.2d 306 (1988). The town objects further to the lack of legal argument or citation to support the estoppel claim in the plaintiffs' brief. The file reveals that the plaintiffs, while not using the term "estoppel," advanced a lengthy estoppel argument in their trial brief. Moreover, estoppel is a defense that need not be specially pleaded. *DelVecchio* v. *DelVecchio*, 146 Conn. 188, 195, 148 A.2d 554 (1959). Finally, the plaintiffs presented legal arguments and citations in their brief on appeal that was available to the town prior to the submission of its brief. Accordingly, we will review the merits of the plaintiffs' estoppel claim.

"Estoppel against municipalities is . . . limited and may be invoked against the enforcement of zoning regulations (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations. *Dupuis* v. *Submarine Base Credit Union, Inc.,* [170 Conn. 344, 354, 365 A.2d 1093 (1976)]." *Zoning Commission* v. *Lescynski,* 188 Conn. 724, 731–32, 453 A.2d 1144 (1982); see also *West Hartford* v. *Gelinas,* 18 Conn. App. 688, 691, 559 A.2d 1176 (1989). To prevail on the claim that the town is estopped from seeking an injunction, Gelinas must establish that an agent of the town induced him to believe that certain facts existed and to act on that belief, and that he changed his position in reliance upon those facts, thereby incurring some injury. *Zoning Commission* v. *Lescynski,* supra, 731.

Gelinas began work on the premises before he had submitted the June 24, 1987 building permit application, the approval of which would have allowed him to commence structural alterations to the interior of the building. The zoning enforcement officer testified that the building permit application to replace windows, to do electrical work, and to make interior alterations had been denied within thirty days of submission. He also testified, however, that: a permit for a heat pump had been issued, but only because unauthorized work on the new second floor had cut off the heat source that had previously protected the fire sprinkler system from freezing; one electrical permit had been issued for a change of service location only; and a permit for fire damage repair that did not involve any room reconfiguration had been issued. Although § 8-3 (f)[17] prohibits

---

[17] General Statutes § 8-3 (f) provides: "No building permit or certificate of occupancy shall be issued for a building, use or structure subject to the zoning regulations of a municipality without certification in writing by the

town officials from issuing building permits of any kind where zoning violations exist, the issuance of certain permits for these limited purposes could not have led Gelinas to believe that he had carte blanche to proceed with extensive structural alterations. We conclude, therefore, that the plaintiffs have not established that the subsequent building and zoning code violations by Gelinas had been induced by an agent of the town. Accordingly, their claim of estoppel must fail.

D

Gelinas also claims in his amended appeal that the trial court abused its discretion by refusing to open the judgment in which it had assessed a daily fine of $100 from June 29, 1987, to June 15, 1990, for the "wilful violation" of zoning ordinances pursuant to General Statutes § 8-12.[18] We agree.

The gravamen of Gelinas' claim is that § 8-12 provides for the imposition of fines for "wilful offenses" only if a defendant has been convicted of a criminal offense. Gelinas maintains that if he was liable for any penalty at all, only the language in § 8-12[19] concerning civil penalties of "not less than ten nor more than one hundred dollars for each day that such violation

official charged with the enforcement of such regulations that such building, use or structure is in conformity with such regulations or is a valid nonconforming use under such regulations."

[18] The trial court order read: "The defendant shall pay $100 per day from June 29, 1987, to June 15, 1990, as a fine for his unlawful alteration of the structure without zoning and building permits at 119 Park Road and for his unlawful maintenance and use of the rooms in the first floor for offices without authorization, permits or a certificate of occupancy, such fine shall be for the *wilful violation* of the zoning regulations pursuant to § 8-12 of the General Statutes . . . ." (Emphasis added.) On June 29, 1987, Gelinas was ordered to obtain site plan approval for any changed uses in order to apply for and be issued building permits pursuant to West Hartford Code § 177-6. On June 15, 1990, Gelinas filed his application for a writ of mandamus.

[19] See footnote 8.

continues" and "a civil penalty not to exceed two thousand five hundred dollars" would be applicable on these facts. Gelinas contends that the legislature did not intend that the remedies in § 8-12 for wilful violations be cumulative or interchangeable with those for non-wilful violations.[20] The town contends, to the contrary, that § 8-12 affords broad discretion to the trial court in fashioning appropriate remedies for the violation of zoning ordinances. The town argues that the trial court imposed the maximum allowable civil fine of $100 or, in the alternative, that the availability of a fine as a penalty in a criminal proceeding for "wilful violations" does not preclude judicial authority from imposing fines in other appropriate circumstances. According to the town, therefore, reasons of judicial economy militate toward a construction that allows the imposition of all fines for zoning violations in a single action.

"A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Citations omitted; internal quotation

[20] In 1987, the General Assembly increased the maximum civil penalty for failure to comply with an order to discontinue or a cease and desist order from $500 to $2500. Public Acts 1987, No. 87-347. Senator Frank D. Barrows remarked: "[Substitute House Bill 6750] raises . . . penalties [for] violating local zoning . . . regulations from $500 to a maximum of $2500. The penalties may be imposed on (1) someone who fails to comply immediately with cease and desist orders from the zoning enforcement official for violation of land [grading] or earth removal violations, (2) someone who fails to comply within 10 working days of being served with the order to [discontinue] any violations, and (3) someone who continues to violate the regulation specified in either order." 30 S. Proc., Pt. 11, 1987 Sess., p. 3838.

marks omitted.) *Walton* v. *New Hartford,* 223 Conn. 155, 169–70, 612 A.2d 1153 (1992).

It is undisputed that the trial court imposed the fine for "wilful violation" of the zoning ordinances. Section 8-12 unambiguously provides for both civil and criminal remedies. It does not, however, authorize a court to impose the same penalties in a civil proceeding that it could impose in a criminal proceeding. To construe the statute as the town proposes would be to render a nullity the necessity for a criminal prosecution as a predicate for the imposition of fines for a "wilful violation." We conclude, therefore, that the trial court improperly denied Gelinas' motion to open the judgment assessing criminal penalties imposed pursuant to § 8-12, in order to consider whether the predicate conviction of a criminal offense existed. Accordingly, we reverse in part the judgment of the trial court and remand the case to that court with direction to vacate the daily fine of $100 for "wilful offenses" and to impose such civil penalties pursuant to § 8-12 as the trial court may deem appropriate in the proper exercise of its discretion.[21]

E

Gelinas finally alleges that the trial court abused its discretion because its injunctive order was so overly broad in its scope and application as to deprive him permanently of the use of an entire floor of the subject building. Gelinas requested that the trial court limit the scope of the injunction, as it related to the first floor, to the area formerly occupied by the stage. The trial court, however, enjoined the use of the entire first floor. Contrary to Gelinas' assertions as to the unreasonableness of the court's order, however, the trial court allowed him either to take the necessary steps within

---

[21] Because we conclude that the trial court improperly assessed the daily fines, we need not reach Gelinas' related claim that the trial court improperly computed the time frame within which the fines would be assessed.

sixty days to obtain approval to use the newly constructed first floor offices or to remove them within six months and reapply for zoning approval for proposed uses for the entire area of the first floor.

We conclude, therefore, that the trial court did not abuse its discretion in framing the scope of the injunctive relief granted.

## II
## THE TOWN'S APPEAL

The town claims in its appeal that the trial court improperly denied the town's request for an injunction against a use change in the basement of Gelinas' building that was in violation of § 177-39 of the West Hartford Code. We agree.

The town introduced evidence that Gelinas had illegally introduced commercial uses into the basement beginning in February, 1987, and had entered into additional commercial leases in 1988 and 1989. These commercial uses were in addition to the valid nonconforming assembly hall main use and dining and kitchen accessory uses by the tenant fraternal organization. On July 10, 1987, the assistant zoning enforcement officer ordered Gelinas to return the entire basement to the prior valid nonconforming uses and issued him an infraction ticket. It is undisputed that Gelinas did not appeal the order.

The town consequently requested an injunction, pursuant to § 8-12, to halt the changed uses in the basement for which a certificate of occupancy had not been issued; West Hartford Code § 177-39; and for which a cease and desist order had been issued on July 10, 1987. The trial court denied the request because it concluded that the evidence concerning the allegations of nonconforming uses and structural changes in the basement was contradictory and inconclusive.

The town argues that injunctive relief should have been granted because it is the proper remedy if a party has failed to appeal a cease and desist order of a zoning enforcement official. "The cease and desist order was, in effect, a determination that the defendant did not have a valid nonconforming use." *Bianco* v. *Darien,* 157 Conn. 548, 558, 254 A.2d 898 (1969).

General Statutes § 8-6 (1) provides that a zoning board of appeals shall have the power "[t]o hear and decide appeals where it is alleged that there is an error in any order, requirement or decision" made by, inter alios, the zoning enforcement officer. Section 177-49 of the West Hartford Code provides that the zoning board of appeals shall have the power and duty "[t]o hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by any official charged with the enforcement and administration of the Zoning Ordinance." We have held that the statutory scheme reflects the legislative intent that the issue of what constitutes a nonconforming use should be resolved in the first instance by local officials. *Greenwich* v. *Kristoff,* 180 Conn. 575, 578, 430 A.2d 1294 (1980); see also General Statutes § 8-7. "[W]hen a party has a statutory right of appeal from the decision of an administrative officer or agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 33, 193 A.2d 483 (1963); *Cummings* v. *Tripp,* 204 Conn. 67, 78, 527 A.2d 1230 (1987). Likewise, the validity of the order may not be contested if zoning officials seek its enforcement after a violator has failed to appeal.

However, "[e]ven in an action brought by a zoning enforcement officer to require conformity with the zoning regulations, the granting of injunctive relief, which must be compatible with the equities of the case, rests

within the trial court's sound discretion. *Dupuis* v. *Submarine Base Credit Union, Inc.,* supra, 356. Those equities should take into account the gravity and wilfulness of the violation, as well as the potential harm to the defendants. *Berin* v. *Olson,* 183 Conn. 337, 343, 439 A.2d 357 (1981)." *Johnson* v. *Murzyn,* 1 Conn. App. 176, 183, 469 A.2d 1227, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984). A review of the record discloses that the equities in this case patently lie with the town. The record clearly reveals that Gelinas installed commercial ventures in the basement of the subject building knowing full well that he was flagrantly violating the West Hartford zoning ordinances.

We conclude, therefore, that the trial court abused its discretion by refusing to render judgment entitling the town to injunctive relief from the unauthorized business use of the basement. Accordingly, we reverse the judgment of the trial court on this issue and remand the case to the trial court with direction to render judgment for the town consistent with this opinion. We leave it to the discretion of the trial court to fashion the scope of the injunctive relief to which the town is entitled.

The judgment is reversed in part with respect to the plaintiffs' appeal, the judgment is reversed with respect to the town's appeal, and the case is remanded for further proceedings in accordance with this opinion.

In this opinion PETERS, C. J., BORDEN and KATZ, Js. concurred.

BERDON, J., dissenting. I disagree with the majority's conclusion that the defendant town's failure to render a decision on the plaintiffs' site plan application did not result in automatic approval of the application. General Statutes §§ 8-3 (g) and 8-7d (b) clearly provide that

applications that are not acted upon within sixty-five days receive automatic approval.[1] In *SSM Associates Limited Partnership* v. *Plan & Zoning Commission*, 211 Conn. 331, 335, 559 A.2d 196 (1989), we held that §§ 8-3 (g) and 8-7d (b) impose "a mandatory time frame of sixty-five days on local site plan approvals."

The majority rejects the plain meaning of §§ 8-3 (g) and 8-7d (b) in favor of an interpretation that provides a town with an additional means of punishing persons who violate the zoning code. They conclude that because these statutes refer to site plans for "a *proposed* building, use or structure,"[2] (emphasis added) they do not apply to an applicant who has already completed a significant portion of the construction contemplated by the site plan. I believe that this conclusion conflicts with the legislature's obvious intent.

The majority's conclusion that the "use of the adjective 'proposed' indicates that the legislature meant to distinguish planned structures, alterations or uses from structures, alterations or uses that have already been fully or significantly implemented . . . without the required building permits or zoning approvals" is unfounded. The better reading of these statutes is that "proposed" simply refers to the project that the applicant seeks to have approved rather than to the status of the project at the time the site plan is submitted. The only reason for distinguishing between planned changes and changes that have been significantly implemented would be to penalize applicants who begin work on a project without first obtaining approval for their

---

[1] General Statutes § 8-3 (g) provides in relevant part: "Approval of a site plan *shall be presumed* unless a decision to deny or modify it is rendered within the period specified in section 8-7d." (Emphasis added.) General Statutes § 8-7d (b) provides in relevant part: "[A] decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan."

[2] See footnotes 5 and 6 of the majority opinion.

site plans. In General Statutes § 8-12, however, the legislature has provided for the penalties that may be assessed against those who violate local zoning ordinances.[3] Common sense dictates that if the legislature intended that the automatic approval provisions should not apply to violators, it would have included a provision to this effect in § 8-12. "As Justice Holmes put it in *Roschen* v. *Ward,* 279 U.S. 337, 339, 49 S. Ct. 336, 73 L. Ed. 722 (1929): '[T]here is no canon against using common sense in construing laws as saying what they obviously mean.' " *State* v. *Roque,* 190 Conn. 143, 153, 460 A.2d 26 (1983).

The plaintiffs correctly point out that the majority's construction of §§ 8-3 (g) and 8-7d (b) could bar a site plan applicant who begins work on a project prior to approval from ever bringing the project into compliance with local zoning ordinances. This is because a "significantly implemented" project could never be a "proposed" project under the majority's construction of §§ 8-3 (g) and 8-7d (b). Following the majority's inter-

---

[3] General Statutes § 8-12 provides in relevant part: "If any building or structure has been erected, constructed, altered, converted or maintained, or any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. . . . The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists . . . shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars nor more than two hundred and fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues or both . . . . Any person who, having been served with an order to discontinue any such violation, fails to comply . . . shall be subject to a civil penalty not to exceed two thousand five hundred dollars . . . ."

pretation, a town could delay indefinitely any decision on a site plan application for the project because the sixty-five day automatic approval provisions would not apply. The town would have no incentive to act on a violator's site plan application. As this case demonstrates, a violator could then be fined $100 or more for each day that his or her application languished. I cannot believe that the legislature intended such a result.

I believe that the court's decision today adds another layer of confusion to our law of zoning. The court makes application of the mandatory time limit of §§ 8-3 (g) and 8-7d (b) depend on whether the property owner has "significantly implemented" some of the proposed changes without first obtaining the necessary permit. The court reads this proviso into the statutes without providing any guidance as to how much change is significant and how change is to be measured.

Local zoning boards are composed of citizen volunteers, most of whom probably are not lawyers. The court's decision will force the local boards in all 169 of Connecticut's towns and cities to grapple with another mass of complexities in what is already a maze for the unwary. Uncertainty and confusion in the law may be great for some, but not for those who volunteer their time to serve on local zoning boards.

What troubles me the most about today's decision is that the court does not offer any practical considerations in support of its construction of the statutes. The purpose of §§ 8-3 (g) and 8-7d (b) is obviously to protect property owners from being stifled by indecision. In *SSM Associates Limited Partnership* v. *Plan & Zoning Commission,* supra, we recognized that the thrust of §§ 8-3 (g) and 8-7d (b) is that the site plan application process should take into account all relevant zoning issues and reach a decision on an application within sixty-five days. The court's holding today that action

on an application can be delayed indefinitely if construction is commenced before approval conflicts with that decision.

In statutory construction, " '[w]e must avoid a consequence which fails to attain a rational and sensible result which bears most directly on the object which the legislature sought to obtain.' *LaProvidenza* v. *State Employees' Retirement Commission,* 178 Conn. 23, 29, 420 A.2d 905 (1979). A statute, of course, should not be interpreted to thwart its purpose. *Kron* v. *Thelen,* 178 Conn. 189, 192, 423 A.2d 857 (1979)." *Builders Service Corporation* v. *Planning & Zoning Commission,* 208 Conn. 267, 276, 545 A.2d 530 (1988). The court furnishes no reasons for its departure from the plain language and purpose of the statutes.

I would hold that the plaintiffs' site plan was automatically approved with the passage of time. Accordingly, I would remand with instructions to issue the writ of mandamus requested by the plaintiffs and dissolve the injunction issued against the plaintiff Gelinas. I would also hold that per diem civil penalties may not be assessed against Gelinas beyond the date when automatic approval of his application would have occurred.