[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal pursuant to General Statutes 8-8 from a decision of the Planning and Zoning Board of Appeals of the Town of CT Page 1788 Greenwich [ZBA] denying plaintiff's appeal from a cease and desist order issued by the Zoning Enforcement Officer [ZEO]. The ZEO's order required the plaintiffs, Nichola and Antoinette Diguglielmo, to cease and desist from commercial activities in their residence, which is located in an R-6 residential zone.
The plaintiffs own a dwelling on Arther Street in Greenwich. (Return of Record [ROR], Item 1, Appeal to ZBA) The first floor of the dwelling is used as a residence for the plaintiffs and their two sons; the second story, which was formerly leased to four tenants, is used for Mrs. Diguglielmo's dressmaking business; and the converted garage is used for Mr. Diguglielmo's antique gun repair shop. (ROR, Item 4, Transcript of November 13, 1991 public hearing [Transcript], pp. 9-11; 13) In March, 1991, in response to an anonymous complaint which alleged that a gun repair business and a bridal salon were being operated at the subject property, the ZEO conducted an inspection of plaintiffs' residence. (ROR, Item 4, Transcript, p. 16) The ZEO found the complaints to be accurate and issued an order to cease and desist from commercial activities in the dwelling. (ROR, Item 4, Transcript, p. 9)
On September 25, 1991, the plaintiffs filed an appeal to the ZBA. (ROR, Item 1, Appeal to ZBA) A public hearing was noticed for October 16, 1991, but at the plaintiff's request, the hearing was continued and held on November 13, 1991. (ROR, Item 2, Notice of Hearing; ROR, Item 3, Request for continuance and transcript, minutes granting request, notification to plaintiff's attorney of continuance, notice for November hearing) After hearing testimony from the plaintiffs, several neighbors, and the ZEO, the ZBA issued decision denying the plaintiffs' appeal. (ROR, Item 8, Publication of Decision) Notice of the ZBA's decision was published in the Greenwich Times on November 22, 1991. (ROR, Item 8, Publication of Decision) The ZBA found that the ZEO's issuance of the cease and desist order was correct because: the retail aspects of the bridal salon did not comply with the definition of home occupation; the gunsmith shop had machinery not customarily found in a home and therefore did not qualify as a home occupation; and the commercial activities could not be considered incidental and accessory to the dwelling as required by the regulation.
On December 2, 1991, the plaintiffs filed an appeal to the superior court pursuant to General Statutes 8-8, seeking a reversal of the ZBA's decision. In their brief, filed March 26, 1992, the plaintiffs maintain the following: (1) that they are using their premises as a family home and for customary home CT Page 1789 occupations, which are both permissible under the applicable regulations; (2) that the reasons stated in the ZBA's decision are not reasonable, supported by the record, or pertinent to the considerations required to be applied by the zoning regulations; (3) that the cease and desist order should not have been upheld because it was improper, illegal, and overly broad; (4) that there is not a prohibition in the zoning regulations against two customary home occupations in one home or against commercial activities in general; and (5) that the plaintiffs' uses of the dwelling strengthen the residential nature of the district and promote the aesthetic values sought to be preserved by the regulations.
General Statutes 8-8 (b) provides that a party taking an appeal must do so by commencing service of process within fifteen days of the date that notice of the decision was published. In the present case, the ZBA published notice of its decision in the Greenwich Times on November 22, 1991. (ROR, Item 8, Publication of Decision) The plaintiffs' complaint was served upon the ZBA on December 3, 1991, 11 days after publication. Therefore, the plaintiffs' appeal is timely.
To show aggrievement, a party must demonstrate a specific, personal, and legal interest in the subject matter of the decision, as distinguished from a general interest, and must establish that this specific, personal, and legal interest has been specially and injuriously affected by the decision. Winchester Woods Association v. Planning and Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953
(1991). At the hearing before this court, the plaintiffs testified that they are the owners of the subject property and are therefore directly affected by ZBA's decision. The plaintiffs also offered a warranty deed into evidence.
An owner of the subject property is "certainly aggrieved by the action' of [a] Commission." Bosert Corporation v. Norwalk,157 Conn. 279, 285, 253 A.2d 16 (1968); see also Winchester Woods Association v. Planning and Zoning Commission, supra, 309. Thus, the court finds that the plaintiffs are aggrieved parties who have standing to appeal the ZBA's decision.
When reviewing a decision of a zoning board, "[t]he controlling question for the trial court is whether the zoning board acted arbitrarily or illegally or so unreasonably as to have abused its discretion." Horn v. ZBA, 18 Conn. App. 674, 676,559 A.2d 1174 (1989); Whittaker v. ZBA, 179 Conn. 650, 654, CT Page 1790427 A.2d 1346 (1980). "The discretion of the local board is a liberal one to be overturned only when the board has not acted fairly or has no valid reasons for acting as it did, or with improper motives." Horn v. ZBA, supra. "Courts must not substitute their judgment for that of the zoning board and must not disturb decisions of local boards as long as honest judgment has been reasonably and fairly exercised after a full hearing." Molic v. ZBA, 18 Conn. App. 159,164, 556 A.2d 1049 (1989). On appeal, the court is limited to examining the record of the hearing before the board to determine whether the conclusions reached were supported by the evidence. Farrington v. ZBA, 177 Conn. 186, 190, 413 A.2d 817 (1979). Furthermore, "[i]t is fundamental zoning law that where a local board gives more than one reason for its decision, [the court] will sustain the decision on appeal if even one of the stated reasons is sufficient to support it." Sakson Nursery, Inc. v. Planning 
Zoning Board, 30 Conn. App. 627, 629-30, 621 A.2d 768 (1993). The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs. Whittaker v. ZBA, supra, 654.
The plaintiffs claim that the ZBA's decision is not supported by the record and that the ZBA did not use the standards required by the regulations when reviewing the appeal from the cease and desist order. The plaintiffs also claim that the cease and desist order was improper, illegal and overly broad.
"General Statutes 8-6 provides that the zoning board of appeals shall, inter alia, hear and decide appeals where it is alleged that there is an error in any order made by a zoning enforcement officer." New London v. Zoning Board of Appeals,29 Conn. App. 402, 405, 615 A.2d 800 (1992); Gelinas v. West Hartford, 225 Conn. 575, 595, 626 A.2d 259 (1993); see also Greenwich Municipal Code 6-19 (a)(2). "A local board . . . is in the most advantageous position to interpret its own regulations and apply them to the situations before it." New London v. Zoning Board of Appeals, supra. "When deciding an appeal from a decision of the board, the trial court must determine whether the board has correctly interpreted its regulations and applied them with reasonable discretion to the facts." Id.
The plaintiffs argue that they were using their premises as a residence and for customary home occupations, which are both permissible under the regulations. They claim that dressmaking is expressly permitted under the applicable regulation and that the gun repair shop contains only tools which would be found in any home workshop. The plaintiffs practice two home occupations, yet CT Page 1791 nothing in the regulations limits such occupations to one per home. Finally, the plaintiffs argue that their uses of the dwelling strengthen the residential nature of the district and promote the aesthetic values sought to be preserved by the regulations.
In response, the ZBA argues that under the regulations, home occupations must be clearly incidental and secondary. The ZBA further argues that it made a factual finding that plaintiffs' activities cannot be considered incidental and accessory to the residential use of the dwelling.
Greenwich Municipal Code 6-98, which covers the R-6 Multi-family zone, provides in subsection (c) that the permitted accessory uses in the R-6 zone shall be the same as those allowed in the R-7 zone. Section 6-97 (b) provides in pertinent part that
 the following accessory uses shall be permitted in R-7 zone: . . . (2) Customary home occupations, provided that each such occupation shall be engaged in only by residents of the premises and not more than two (2) nonresident employees, that no accessory building shall be used and that no display of products or signs advertising such products shall be visible from the street.
The phrase "home occupation" is defined in 6-5 (28) as the following:
 any use customarily conducted entirely within a dwelling and carried on by the residents thereof using only customary home appliances, which use is clearly incidental and secondary to the use of the dwelling for dwelling purposes and does not change the character thereof, such as dressmaking, millinery, massaging, preserving and the like. Uses such as, but not limited to the conduction of dancing or music studio, tourist home, kennel, animal hospital, or any similar use, shall not be deemed to be a home occupation.
Although dressmaking is expressly permitted by the statute, the ZBA made a factual finding that Mrs. Diguglielmo's business was not simply a small, home-based dressmaking operation, but possessed larger, commercial retail characteristics. At the hearing, the ZEO testified as to the circumstances surrounding the cease and desist order. (ROR, Item 4, Transcript, pp. 15-25) The ZEO found that the second floor of the residence was essentially the same CT Page 1792 operation as Mrs. Diguglielmo's former bridal salon at 79 East Putnam Avenue in Greenwich. (ROR, Item 4, Transcript, p. 16) The ZEO testified that she came to this conclusion after observing approximately 24 dresses on display in the front room, and approximately 100 dresses hanging in a back room, as well as approximately 75 pairs of shoes. (ROR, Item 4, Transcript, p. 17-18) The plaintiff told the ZEO that she had "in excess of half a million dollars in inventory." (ROR, Item 4, Transcript, p. 18) The ZEO also observed three customers during her visit to the plaintiffs' residence. (ROR, Item 4, Transcript, p. 17) An advertisement for the dressmaking shop in the Greenwich Review offering "sample gowns at half price" was also introduced at the hearing. (ROR, Item 4, Transcript, p. 30; Item 5e, Advertisement from Greenwich Review) Based upon the foregoing, the ZEO concluded that the shop was a retail business,[1] which could not be considered a home occupation under the regulations but rather, a commercial operation. (ROR, Item 4, Transcript, p. 21)
As for the antique gun shop, the record indicated that the ZBA agreed with the ZEO's conclusion that Mr. Diguglielmo's shop did not contain only customary home appliances. (ROR, Item 4, Transcript, p. 21) The discussion at the hearing focused on the different types of tools Mr. Diguglielmo used in his gun repair shop, such as a bench lathe, drill press, and filer. (ROR, Item 4, Transcript, pp. 31-32)
The ZEO also indicated that she felt that there were potential parking problems, and pointed out that over half the dwelling was used for commercial purposes. (ROR, Item 4, Transcript, pp. 19-20) The entire second floor of the dwelling, which used to be an apartment, was used for the dressmaking shop, and the plaintiffs had added track lighting and floor to ceiling mirrors. (ROR, Item 4, Transcript, pp. 16-17) The one car garage was converted into the antique gun shop. (ROR, Item 4, Transcript, pp. 19; 11) Only the lower level of the house was used for residential purposes. (ROR, Item 4, Transcript, p. 35) A member of the ZBA noted at the hearing that when over 50% of a house is used for other than living/residential use, such use is not "incidental" under the regulation. (ROR, Item 4, Transcript, p. 34)[2]
After hearing testimony and viewing exhibits of pictures of the outside of the house, petitions from the neighbors supporting the plaintiffs, and advertisements in the phone book and the Greenwich Review, the ZBA unanimously decided that the ZEO's issuance of the cease and desist order was correct. (ROR, Item 6, CT Page 1793 Minutes of Decision) The ZBA stated in its decision that "[b]ecause of the retail aspects of the bridal salon, the use does not comply with the definition of home occupation." (ROR, Item 6, Minutes of Decision) The ZBA also found that "the two commercial activities cannot be considered incidental or accessory to the dwelling as required by Sections 6-5 and 6-97 of the Building Zone Regulations." (ROR, Item 6, Minutes of Decision)
"The board is entrusted with the function of interpreting and applying its own zoning regulations." New London v. Zoning Board of Appeals, supra. The ZBA made a factual finding that under the regulations, the ZEO was correct in her conclusion that the two occupations she observed were not incidental and secondary to the residential use of the dwelling.[3]
The plaintiffs argue that the ZBA gave too much weight to the ZEO's testimony. However, "[f]actual issues including the credibility of witnesses, are within the province of the agency." Chapman v. ZBA, 23 Conn. App. 441, 443, 581 A.2d 745 (1990). The ZBA's finding that the dressmaking shop was retail in nature, that the antique gun shop contained tools not customarily found in a home, and that the plaintiffs' occupations were not incidental to the dwelling's residential use are amply supported by the record. The plaintiffs have failed to sustain their burden of proving that the ZBA's decision was unreasonable, arbitrary, or an abuse of discretion.
The plaintiffs argue that the ZBA should not have upheld the cease and desist order since it was illegal and improper. They claim that the ZEO was not authorized by the regulations to stop commercial activities because all customary home occupations are commercial by nature.
The plaintiffs have neither provided caselaw nor cited any applicable statutes or regulations in support of their contention that the ZEO's order was illegal and improper. The ZBA has the power to "hear and decide appeals where it is alleged that there is error in any order or decision made by the [ZEO]." Greenwich Municipal Code 6-19 (a)(2). The ZBA did not agree with plaintiffs' contention, since it denied plaintiffs' appeal and gave weight to the ZEO's testimony. Furthermore, the cease and desist order did not expressly forbid all commercial activities; the ZEO simply found that the commercial activities at the time of the inspection were not incidental and accessory to the dwelling's residential use. The ZBA agreed with the ZEO's conclusion, as reflected in its CT Page 1794 decision.
"A decision of the board will be reversed only when the plaintiff has proven that the decision was unreasonable, arbitrary, or illegal." New London v. ZBA, supra. As noted above, the plaintiffs have failed to meet this burden of proof. Accordingly, the court hereby dismisses the plaintiffs' appeal.
KARAZIN, J.