WILLIAM P. GELINAS *v.* TOWN OF WEST HARTFORD ET AL.
(AC 13774)

Foti, Mihalakos and Healey, Js.

Argued January 17—officially released August 28, 2001

*Timothy J. Fitzgerald*, with whom, on the brief, were *Paul S. Levin* and *Mark S. Rosenblit*, for the appellant (plaintiff).

*Elizabeth Dee Bailey*, assistant corporation counsel, for the appellee (defendant).

*Opinion*

HEALEY, J. In this case involving the propriety and kinds of fines that may be imposed under General Statutes § 8-12,[1] the plaintiff, William P. Gelinas, appeals

[1] General Statutes § 8-12 provides: "If any building or structure has been erected, constructed, altered, converted or maintained, or any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. Such regulations shall be enforced by the officer or official board or authority designated therein, who shall be authorized to cause any building, structure, place or premises to be inspected and examined and to order in writing the remedying of any condition found to exist therein or thereon in violation of any provision of the regulations made under authority of the provisions of this chapter or, when the violation involves grading of land, the removal of earth or soil erosion and sediment control, to issue, in writing, a cease and desist order to be effective immediately. The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists, or the lessee or tenant of an entire building or entire premises where such violation has been committed or exists, or the owner, agent, lessee or tenant of any part of the building or premises in which such violation has been committed or exists, or the agent, architect, builder, contractor or any other person who commits, takes part or assists in any such violation or who maintains any building or premises in which any such violation exists, shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars nor more than two hundred and fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues or both; and the Superior Court shall have jurisdiction of all such offenses, subject to appeal as in other cases. Any person who, having been served with an order to discontinue any such violation, fails to comply with such order within ten days after such service, or having been served with a cease and desist order with respect to a violation involving grading of land, removal of earth or soil erosion and sediment control, fails to comply with such order immediately, or continues to violate any provision of the regulations made under authority of the provisions of this chapter specified in such order shall be subject to a civil penalty not to exceed two thousand five hundred dollars, payable to the treasurer of the municipality. In any criminal prosecution under this section, the defendant may plead in abatement that such

from the judgment of the trial court, rendered after the case was remanded by our Supreme Court,[2] ordering him to pay daily civil fines for the violation of that statute. On appeal, the plaintiff claims that the trial court improperly (1) imposed a daily fine on him in violation of § 8-12, (2) imposed on him a fine in excess of $2500 in violation of § 8-12, (3) computed the time frame for which the daily fine was assessed,[3] (4) awarded costs and attorney's fees to the defendant town of West Hartford (town)[4] pursuant to § 8-12,[5] (5) denied his motion of October 14, 1994, to set aside the judgment and (6) violated the constitutional prohibition against double jeopardy by imposing on him a fine in excess of $108,000. We affirm the judgment of the trial court.

This case has its genesis in an action that the plaintiff instituted in 1990, seeking a writ of mandamus ordering

criminal prosecution is based on a zoning ordinance or regulation which is the subject of a civil action wherein one of the issues is the interpretation of such ordinance or regulations, and that the issues in the civil action are such that the prosecution would fail if the civil action results in an interpretation different from that claimed by the state in the criminal prosecution. If the court renders judgment for such municipality and finds that the violation was wilful, the court shall allow such municipality its costs, together with reasonable attorney's fees to be taxed by the court. The court before which such prosecution is pending may order such prosecution abated if it finds that the allegations of the plea are true."

[2] *Gelinas* v. *West Hartford*, 225 Conn. 575, 596, 626 A.2d 259 (1993).

[3] The Supreme Court in *Gelinas* held that "[b]ecause we conclude that the trial court improperly assessed the daily fines, we do not reach [the plaintiff's] related claim that the trial court improperly computed the time frame within which the fines would be assessed." *Gelinas* v. *West Hartford*, 225 Conn. 575, 593 n.21, 626 A.2d 259 (1993). We believe that it is fairly implied that the Supreme Court implicitly approved of the temporal form of the daily fines, and disagreed only with the wilfulness aspect of the fines and not the term itself. Accordingly, we, too, will uphold the time frame for which the daily fines were assessed.

[4] Donald Foster, the town planner for the town, also is a defendant. For purposes of convenience, however, we shall refer to the defendants as the town.

[5] The plaintiff, in oral argument before this court, expressly abandoned his claim that the trial court improperly awarded costs and attorney's fees to the town.

the town to issue a certificate of zoning approval for his revised site plan in connection with work at premises he owns at 119-121 Park Road, West Hartford.

By way of background to the mandamus action, we note the following facts. Since 1986, the plaintiff has owned a two story building at 119-121 Park Road. Those premises formerly had been owned by a fraternal organization, and had been used for large indoor meetings and events. During the early part of 1987, the plaintiff made alterations to the building, including the removal of a first floor assembly hall stage, and the construction of two floors of offices in place of the stage and a part of the assembly hall. After the plaintiff completed the modifications, on June 24, 1987, he applied for a building permit to make changes to the interior of the building. Town officials, believing that the proposed changes constituted a change in use, inspected the property and found that much of the work for which the permit was sought already had been completed, and was in violation of the town's zoning ordinances and the building code. Town officials thereupon posted "do not occupy" and "stop work"[6] orders at the site, and notified the plaintiff that he was in violation of the zoning and building codes, and that he was required to obtain site plan approval, permits and inspections. The date of that order was June 29, 1987.

A prosecution for the building code violations was initiated in the Housing Session of the Superior Court. The Housing Session ordered the plaintiff to return the building to its prior condition. The plaintiff later was arrested on the building code violations and, on January 21, 1988, the Housing Session, after accepting his plea

---

[6] The town building inspector issued his "stop work" and "do not occupy" orders pursuant to §§ 177-38 and 177-41 of the West Hartford Code. The state building code is the building code for the town pursuant to General Statutes § 29-253. See Regs., Conn. State Agencies § 29-252-1a.

of nolo contendere, fined him $500 and granted him accelerated rehabilitation.[7]

The revised site plan was not approved, denied or modified, and in June, 1990, the plaintiff and Morton Weiner,[8] who owned property adjacent to that of the plaintiff, brought the mandamus action against the town.[9] In the mandamus action, the plaintiff and Weiner sought a certificate of approval for their February 29, 1988 joint revised site plan application pursuant to General Statutes § 8-3 (g)[10] and General Statutes (Rev. to 1987) § 8-7d,[11] which provides that a site plan is pre-

[7] In granting the plaintiff accelerated rehabilitation, the Housing Session imposed a sentence of ninety days, which it suspended on the condition that there be no occupancy for one year of three small offices on the second floor, pending a receipt of a certificate of occupancy or an authorization through the civil proceeding, the mandamus action, which already had been instituted, or the expiration of one year (the period of the conditional discharge ordered in the criminal proceeding).

[8] Weiner owned property adjacent to the plaintiff's property. On February 29, 1988, the plaintiff and Weiner filed a revised site plan application covering their joint properties. Although Weiner was involved with the plaintiff in a later appeal to the Supreme Court in *Gelinas* v. *West Hartford*, 225 Conn. 575, 626 A.2d 259 (1993), which is discussed in this opinion, Weiner is not involved in the appeal now before us.

[9] Section 177-42 B (1) of the West Hartford Code provides in relevant part that the town planner "shall approve, disapprove or approve with modification . . . proposed site plan[s] . . . within fifteen (15) days after having received all of the information described in . . . the application. . . ."

[10] General Statutes § 8-3 (g) provides in relevant part: "The zoning regulations may require that a site plan be filed with the . . . municipal agency or official to aid in determining the conformity of a *proposed building, use or structure* with specific provisions of such regulations. . . . Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. A certificate of approval of any plan for which the period for approval has expired and on which no action has been taken shall be sent to the applicant within fifteen days of the date on which the period for approval has expired. . . ." (Emphasis added.)

[11] General Statutes (Rev. to 1987) § 8-7d provides in relevant part: "(a) Except as provided in subsection (b) of this section, in all matters wherein a formal petition, application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter and a hearing is required on such petition, applica-

sumed to be approved unless a decision to deny or modify is rendered within sixty-five days after receipt of the application. Both the plaintiff and Weiner were denied any relief by the trial court.

The town, however, had filed a counterclaim in the mandamus action. It alleged that the plaintiff had altered the building without first obtaining site plan approval and building permits, that he had utilized the building without obtaining a certificate of occupancy and that he had failed to comply with orders to discontinue or remedy the zoning violations. Pursuant to § 8-12, the town sought injunctive relief, the imposition of certain fines, and the payment of attorney's fees and costs.[12] The court ordered[13] much of the relief sought by the town.

tion, request or appeal, such hearing shall commence within sixty-five days after receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. . . .

"(b) Whenever the approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations for a proposed building, use or structure, a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan. . . ."

[12] Proceeding under General Statutes § 8-12, the town sought injunctive relief to restrain the plaintiff from occupying the parts of the building that had been altered and an order that he correct the building code violations, remove illegal alterations, pay a civil penalty of $2500, costs and attorney's fees, pay a fine of $100 per day from June 29, 1987, the date that he was ordered to obtain a site plan approval for any changed uses, to the date that the zoning violations were corrected, and pay a fine of $250 per day from December 5, 1989, to the date that certain other wilful zoning violations were corrected.

[13] In its memorandum of decision, the court enjoined the plaintiff from using the altered parts of the building until he had obtained all necessary zoning and building authorizations, certificates and permits. The court further ordered him to remove some of the alterations unless he obtained necessary zoning and building permits and inspection approvals, and to pay fines of $100 per day from June 29, 1987, the date on which he had been ordered to obtain site plan approval and building permits, to June 15, 1990, the date on which he had sought the writ of mandamus, for the wilful

Thereafter, the plaintiff and Weiner appealed to the Supreme Court. The town filed a cross appeal. In his appeal, the plaintiff claimed, inter alia, that the trial court improperly (1) rejected his claim that the town's failure to render a decision on the site plan application resulted in automatic approval of that application pursuant to § 8-3 (g) and § 8-7d, (2) concluded that he and Weiner were not entitled to a writ of mandamus directing the town to grant their site plan application, (3) issued an injunction against him pursuant to § 8-12 in favor of the town on its counterclaim, (4) found that the evidence was sufficient to support its decision to grant the injunctive relief, pursuant to § 8-12, as requested by the town, (5) failed to conclude that the town was estopped from seeking an injunction and (6) abused its discretion by refusing to open the judgment in which it assessed a daily fine of $100 from June 29, 1987, to June 15, 1990, for the "wilful violation" of zoning ordinances pursuant to § 8-12.

The Supreme Court rejected all of the plaintiff's claims with the exception of the issue that he raised concerning the daily fine of $100 for "wilful violation." As to that claim, which was resolved in favor of the plaintiff, the Supreme Court reversed in part the judgment of the trial court and "remand[ed] the case to that court with direction to vacate the daily fine of $100 for 'wilful offenses' and to impose such civil penalties pursuant to § 8-12 as the trial court may deem appropriate in the proper exercise of its discretion." *Gelinas* v. *West Hartford*, 225 Conn. 575, 593, 626 A.2d 259 (1993).[14]

---

violation of zoning regulations pursuant to General Statutes § 8-12 by his unlawful alteration and use of the building.

[14] We note that the Supreme Court, in setting out the plaintiff's claims, referred to his claim for the daily fines for the "wilful violation" of zoning ordinances, but thereafter referred to the same alleged wrong as "wilful offenses." We treat those referrals as interchangeably synonymous.

Significantly, in resolving the issue for the plaintiff, the Supreme Court also stated that "[b]ecause we conclude that the trial court improperly

In its cross appeal, the town claimed that the trial court improperly denied its request for an injunction against the use change in the basement of the plaintiff's building that was in violation of § 177-39 of the West Hartford Code. The Supreme Court agreed with the town.

In articulating its ultimate disposition of each appeal in its May 25, 1993 decision, the Supreme Court stated: "We conclude, therefore, that the trial court abused its discretion by refusing to render judgment entitling the town to injunctive relief from the unauthorized business use of the basement. Accordingly, we reverse the judgment of the trial court on this issue and remand the case to the trial court with direction to render judgment for the town consistent with this opinion. We leave it to the discretion of the trial court to fashion the scope of the injunctive relief to which the town is entitled.

"The judgment is affirmed in part and reversed in part with respect to the plaintiffs' appeal, the judgment is reversed with respect to the town's appeal, and the case is remanded for further proceedings in accordance with this opinion." Id., 596.

After the release of the Supreme Court's decision in *Gelinas*, the town filed a motion dated November 13, 1993, in the trial court for judgment consistent with the Supreme Court's opinion. A hearing was held on that motion on June 16, 1994.[15] At the outset of that hearing, the court noted that subsequent to the remand in *Gelinas*, the parties had entered into a stipulation.[16] As the

---

assessed the daily fines, we do not reach [the plaintiff's] related claim that the trial court improperly computed the time frame within which the fines would be assessed." *Gelinas* v. *West Hartford*, supra, 225 Conn. 593 n.21.

[15] Neither testimonial nor documentary evidence was received by the trial court at that hearing.

[16] That stipulation was dated May 5, 1994. It contained three paragraphs and reinstated the orders of May 31, 1991 (from which the plaintiff had appealed to the Supreme Court), "with the following provisos . . . ." (Those are not crucial to this appeal.)

court pointed out, the only matter left unresolved by the stipulation was "the question of daily fines [which were covered in paragraph three of the stipulation.]"[17]

In its original orders of May 31, 1991, paragraph four provided the following: "The [plaintiff] shall pay $100 per day from June 29, 1987, to June 15, 1990, as a fine for his unlawful alteration of the structure without zoning and building permits at 119 Park Road and for his unlawful maintenance and use of the rooms in the first floor for offices without authorization, permits or a certificate of occupancy; such fine shall be for the wilful violation of the zoning regulations pursuant to § 8-12 of the General Statutes from June 29, 1987, when the [plaintiff] was ordered to obtain site plan approval for any changed uses in order to apply for and be issued building permits pursuant to § 177-6 [of the West Hartford Code], to June 15, 1990, when he filed an application for an order in the nature of a mandamus."

After the court heard the parties on the matter, it opined that the "$2500 cap" proviso in § 8-12 "does not apply in this situation." It also concluded that the Supreme Court in *Gelinas* did not conclude that the time period that it had used for the original imposition of the daily fine in 1991, i.e., from June 29, 1987, to June 15, 1990, was improper. The court stated that "to follow the judgment of the Supreme Court . . . the court is . . . going to vacate the $100 per day fine for wilful violation." It then proceeded to alter the 1991 order by deleting the phrase, "for the wilful violation of the zoning regulations." Proceeding, the court ordered that the word "civil" be inserted before the word "fine"[18] and stated that "[s]uch civil fine shall be

---

[17] Paragraph three of the stipulation reads: "If no stipulation regarding order # 4 (daily fines) has been filed with the court, the parties will return to court for a hearing in three weeks."

[18] In so doing, the court stated: "I'm going to include the word 'civil' [in the phrase in the order that reads] 'as a civil fine for his unlawful alteration.' "

pursuant to § 8-12 of the General Statutes." Thereafter, the plaintiff filed his motion dated October 14, 1994, to set aside the court's judgment of June 16, 1994, on the ground that it violated the double jeopardy clause of the fifth amendment to the United States constitution and the excessive fine clause of the eighth amendment to the United States constitution. The court denied the motion. This appeal followed.

I

The plaintiff first claims that the court improperly imposed a daily fine on him in violation of § 8-12. Specifically, the plaintiff contends that § 8-12 does not permit the imposition of daily fines in civil actions.

"Statutory interpretation is a question of law and, therefore, our review is plenary." *National Loan Investors Ltd. Partnership* v. *Heritage Square Associates*, 54 Conn. App. 67, 71, 733 A.2d 876 (1999). " 'In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature.' " *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 390, 618 A.2d 1340 (1993), quoting *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 755, 601 A.2d 1005 (1992). "It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation." *Vaillancourt* v. *New Britain Machine/Litton*, supra, 391. "[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987). " 'The construction of a statute depends upon its expressed intent when it is taken as a whole.' " *State* v. *Burney*, 189 Conn. 321, 326, 455 A.2d 1335 (1983), quoting *Dombrowski* v. *Fafnir Bearing Co.*, 148 Conn. 87, 90, 167 A.2d 458 (1961).

In considering statutory construction, it is prudent to be mindful that " '[p]rimarily, it is for the legislature, which is the arbiter of public policy, to determine what it shall be.' " *Local 1303 & Local 1378* v. *Freedom of Information Commission*, 191 Conn. 173, 179, 463 A.2d 613 (1983), quoting *General Motors Corp.* v. *Mulquin*, 134 Conn. 118, 132, 55 A.2d 732 (1947). A statute, of course, should not be interpreted to thwart its purpose. *Narel* v. *Liburdi*, 185 Conn. 562, 571, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928, 102 S. Ct. 1974, 72 L. Ed. 2d 443 (1982); *Kron* v. *Thelen*, 178 Conn. 189, 192, 423 A.2d 857 (1979); *Second Injury Fund* v. *Lupachino*, 45 Conn. App. 324, 342, 695 A.2d 1072 (1997); see *Turner* v. *Scanlon*, 146 Conn. 149, 157, 148 A.2d 334 (1959). "Legislative intent is found not in what the legislature meant to say but in the meaning of what it did say." *Dana-Robin Corp.* v. *Common Council*, 166 Conn. 207, 221, 348 A.2d 560 (1974). " 'Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended. . . . No word or phrase in a statute is to be rendered mere surplusage.' " (Citation omitted.) *Gelinas* v. *West Hartford*, supra, 225 Conn. 584. In applying those principles, we keep in mind that the legislature is presumed to have intended a reasonable, just and constitutional result. *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 187, 592 A.2d 912 (1991).

We note initially that the Supreme Court in *Gelinas* concluded that "[s]ection 8-12 unambiguously provides for both civil and criminal remedies." *Gelinas* v. *West Hartford*, supra, 225 Conn. 593. Further, its very title, "Procedure where regulations are violated," signals the content of this lengthy[19] statute, which methodically sets out the who, the what and the when of the application of its contents.

---

[19] General Statutes § 8-12 contains about 650 words.

Despite its length, § 8-12 contains only seven senten-
ces. Briefly, and generally speaking, the first sentence
authorizes any appropriate official "in addition to other
*remedies* . . . to institute an action or proceeding" to
bring into regulatory conformity any violation of the
zoning regulations. (Emphasis added.) General Statutes
§ 8-12. The second sentence refers to who specifically
is authorized to enforce claimed violations. The third
sentence provides for the imposition of fines on a daily
basis in various dollar amounts when violations of the
regulations are found to have been committed or are
ongoing,[20] with the amounts of the fines being deter-
mined by whether the violation is "wilful" or nonwilful.
The fourth sentence provides for the imposition of a
civil penalty[21] not to exceed $2500 on any person who
fails to comply with an order within ten days after its
service. The fifth sentence provides that a defendant
in a criminal prosecution[22] brought under § 8-12 may
plead in abatement if the prosecution is based on a
zoning ordinance or regulation that is the subject of a
civil action in which the interpretation of such ordi-
nance or regulation is at issue such that the prosecution
would fail in the event that the civil action results in
an interpretation different from that claimed by the

---

[20] The third sentence of General Statutes § 8-12 uses the word "exists" as
to violations, thereby clearly declaring that the continuity of a violation may
be the subject of a fine for each day such violation continues to exist.

[21] The chameleon-like quality of the term "penalty" has not escaped notice.

"The term 'penalty' in its broadest sense includes all punishment of what-
ever kind. 13 Amer. & Eng. Ency. of Law, p. 53. A fine is always a penalty,
but a penalty may not always be a fine. *United States* v. *Nash,* [111 F. 525
(W.D. Ky. 1901)]." *Bankers Trust Co.* v. *Blodgett,* 96 Conn. 361, 368, 114 A.
104 (1921); *Beacon Falls* v. *Posick,* 17 Conn. App. 17, 42 n.13, 549 A.2d
656 (1988). Nonetheless, because no word in a statute may be considered
superfluous, we will consider the legislative choice of the word "penalty"
in the sentence.

[22] The fifth sentence of General Statutes § 8-12 is the only one in which
the term "criminal prosecution" appears. The phrase expressly appears three
times in that sentence and once by direct implication in the sixth sentence
of that statute.

state in the criminal prosecution. The sixth and seventh sentences provide that if the court renders judgment for the municipality in the criminal prosecution and finds that the violation was wilful, then the court shall allow the municipality its costs as well as reasonable attorney's fees. To the contrary, if the court finds that the allegations in the defendant's plea in abatement are true, then the court may order that prosecution cease.

With that, we now consider whether the daily fines imposed in this case are civil or criminal penalties.[23] "The question of whether a given sanction is civil or criminal is one of statutory construction." *One Lot Emerald Cut Stones* v. *United States*, 409 U.S. 232, 237, 93 S. Ct. 489, 34 L. Ed. 2d 438 (1972); see also *United States* v. *Ward*, 448 U.S. 242, 248, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980). In deciding whether the statutory penalty is civil or criminal, we use a two step analysis. See *United States* v. *Ward*, supra, 248–49. First, we must determine whether the legislature, either expressly or impliedly, can be said to have intended the penalty to be civil or criminal. See *One Lot Emerald Cut Stones* v. *United States*, supra, 236–37. Second, if we determine that the legislature intended to create a civil penalty, then we must decide whether civil penalties imposed on the plaintiff are so punitive in form and effect as to render them criminal. See *United States* v. *Ward*, supra, 249; *State* v. *Duke*, 48 Conn. App. 71, 78, 708 A.2d 583, cert. denied, 244 Conn. 911, 713 A.2d 829 (1998).

We previously noted that the *Gelinas* court observed that § 8-12 "unambiguously" provides for both "civil and criminal *remedies*." After examining the plain language of the statute, it is apparent that it provides for

[23] We use the word "penalty" or "penalties" to include "fine" or "fines." See *Bankers Trust Co.* v. *Blodgett*, 96 Conn. 361, 368, 114 A. 104 (1921).

A fair reading of the Supreme Court opinion in *Gelinas* supports our view that the court used the terms "fine[s]" and "penalt[ies]" interchangeably. See *Gelinas* v. *West Hartford*, supra, 225 Conn. 578, 586, 591–93.

the imposition of both daily civil penalties or fines and daily criminal penalties or fines.[24]

For the violation of zoning regulations, § 8-12 provides that the appropriate authority may pursue enforcement of the regulations in either a civil or criminal proceeding. Given that the legislature enabled authorities to pursue enforcement in either a civil or criminal proceeding, it accordingly is logical that it provided for both civil and criminal fines and penalties.

In the portion of § 8-12 providing for daily fines, the third sentence, the legislature explicitly provided for both civil and criminal daily fines. The third sentence of § 8-12 states that the "[o]wner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists . . . shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues; but if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars nor more than two hundred and fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues or

---

[24] In arguing that the court improperly imposed on him daily fines under General Statutes § 8-12, the plaintiff argues in his principal brief that "[t]herefore, the precise question before the trial judge on remand was what civil penalties may be imposed under the statute." He goes on to state that the "most authoritative analysis of this issue is set forth in [R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 42.1]." After certain references to that work, he states in his brief that "[t]he aforestated treatise regards *both* levels of daily fine as criminal penalties. This analysis is also consistent with the plain language of § 8-12, which refers to both available daily assessments as 'fines,' and declares and delimits both levels of daily fines in the same sentence of the statute. It is also noted that monetarily speaking, the 'wilful' level of fine commences exactly where the 'nonwilful' level of fine terminates, indicating that *both* levels of fine are part of a seamless unitary scheme of criminal punishment." (Emphasis in original.)

We have examined the referenced section of Fuller's work. We do not read it to state that "[t]he aforestated treatise regards *both* levels of daily fine as criminal penalties." (Emphasis in original.)

both . . . ." The fact that the legislature provides for different fines to be imposed, depending on the proceeding involved, evinces the legislature's intent to establish both daily civil fines and daily criminal fines.

As the statute states, for violations of the regulations, a person shall be fined not less than $10 nor more than $100 for each day that the violation continues. That portion of the provision refers to a civil proceeding, one that does not require a finding of wilfulness or a criminal conviction.

On the other hand, the statute provides that if an offense is wilful and the person is convicted thereof, the amount of the fine is to be more than $100 per day, but not more than $250 for each day. According to Black's Law Dictionary (6th Ed. 1990), to convict means "[t]o find a person guilty of a criminal charge, either upon a criminal trial, a plea of guilty, or a plea of nolo contendere. . . ." The use of the word "convicted," demonstrates that the legislature distinguished between civil and criminal proceedings. The imposition of an elevated fine upon conviction manifests the legislature's intent to impose a different and greater penalty on those "convicted" in a criminal proceeding.

Further, the word "continues,"[25] as used in the third sentence of § 8-12, means "to keep going, to be steadfast or constant in a course or activity, remain in existence."

[25] The word "continues" is used twice in the third sentence of General Statutes § 8-12, once with the phrase about fines of "not less than ten nor more than one hundred dollars *for each day,*" and once with the phrase about fines of "not less than one hundred dollars nor more than two hundred and fifty dollars *for each day* . . . ." (Emphasis added.) General Statutes § 8-12.

We note that the only other place in § 8-12 where the word "continues" appears is in the fourth sentence where, significantly, although it may be given the same meaning, the legislative draftsmanship does not have any "for each day" language.

Webster's Third New International Dictionary (1971). On its face, as used in that sentence, the fine "for each day," "violation," "continues" plainly is used as reflecting that which is without limitation, ongoing. That view is supported by another word chosen by the legislature that appears in this sentence and underlines the temporal message of "continues." That is the word "exists." The word "exists" in this context means "to have actual or real being." Id. "Continues" and "exists" clearly refer to violations that are, in a word, "ongoing." Those words are intended to apply to those violations that are in being and serve to demonstrate that they were intended to follow and include those violations that already have been "committed." The word "committed" appears three times in the third sentence of § 8-12 and each time conjunctively with the words "or exists," thus declaring the legislature's intent to fine violations during the entire temporal spectrum of the "violations."

Our Supreme Court has held that "[t]he disjunctive 'or' can be construed as 'and' where such construction clearly appears to have been the legislative intent." (Internal quotation marks omitted.) *D'Occhio* v. *Connecticut Real Estate Commission*, 189 Conn. 162, 170, 455 A.2d 833 (1983); *In re Corey E.*, 40 Conn. App. 366, 371, 671 A.2d 396 (1996). The word "or" is used here in its conjunctive sense and, when so used, denotes a joinder, a union and is used to conjoin a word with a word. "The [legislature's] use of a verb tense is significant in construing statutes." *United States* v. *Wilson*, 503 U.S. 329, 333, 112 S. Ct. 1351, 117 L. Ed. 2d 593 (1992); *In re AroChem Corp.*, 176 F.3d 610, 623 (2d Cir. 1999); *Sampiere* v. *Zaretsky*, 26 Conn. App. 490, 493, 602 A.2d 1037, cert. denied, 222 Conn. 902, 606 A.2d 1328 (1992).

Moreover, as to the sanctions involved being civil or criminal, among the factors that indicate whether a

"sanction is punitive or remedial in nature" are those set out by the United States Supreme Court in *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168–69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963).[26] Upon examination of the *Kennedy* factors, we do not glean any constitutional impact from any of them that requires a conclusion that the challenged daily fine provisions have any impact on any constitutionally protected right of the plaintiff. We do note, however, that although there is an element of deterrence in the sanctions imposed, that element certainly is not the primary focus of the statutory scheme, and the " 'clearest proof' "; *State* v. *Duke*, supra, 48 Conn. App. 75; has not been shown that the legislative scheme is so punitive as to negate the legislative intent that the sanction be remedial. See id. As the United States Supreme Court stated in *United States* v. *Ursery*, 518 U.S. 267, 284–85 n.2, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996): "It is hard to imagine a sanction that has no punitive aspect whatsoever." It is relevant here to point out that *Ursery* did not approve of the view that a sanction whose purpose was not "purely remedial" must be construed as punitive. Id., 284. Our Supreme Court apparently inclines toward the same view. See *State* v. *Tuchman*, 242 Conn. 345, 361, 699 A.2d 952 (1997), cert. dismissed, 522 U.S. 1101, 118 S. Ct. 907, 139 L. Ed. 2d 922 (1998); *State* v. *Hickam*, 235

---

[26] This court has said of *Kennedy* v. *Mendoza-Martinez*, supra, 372 U.S. 144: "Among the factors that are indicative of whether a sanction is punitive or remedial in nature are whether (1) it involves an affirmative disability or restraint, (2) it has historically been regarded as a punishment, (3) it comes into play only on a finding of scienter, (4) its operation will promote the traditional aims of punishment, i.e., retribution and deterrence, (5) the behavior to which it applies is already a crime, (6) an alternative purpose to which it may rationally be connected is assignable for it, and (7) it appears excessive in relation to the alternative purpose assigned. [Id., 168–69]." *State* v. *Duke*, supra, 48 Conn. App. 75.

We note that the United States Supreme Court has stated that the factors in *Kennedy* are neither exhaustive nor dispositive. *United States* v. *Ward*, supra, 448 U.S. 249.

Conn. 614, 623, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996).

Some years ago, our Supreme Court stated that "[t]he primary object of zoning is to promote the health, safety, welfare and prosperity of the community," and that "[i]ts ultimate purpose is to confine certain classes of buildings and uses to certain localities." *Langbein* v. *Board of Zoning Appeals*, 135 Conn. 575, 580, 67 A.2d 5 (1949); *Thayer* v. *Board of Appeals*, 114 Conn. 15, 23, 157 A. 273 (1931). Section 8-12 advances the object and purposes of zoning in providing for the procedure to be used when zoning regulations are violated. The daily fine provisions serve a legitimate remedial purpose in maintaining the integrity of those regulations. We note that it appears to be implicit in that statute that the offending landowner has the power to bring his property into zoning conformity and shorten, or end, the running of the daily fines. Once the particular violation no longer "continues" or "exists," the daily fines are abated. In a word, he can "remedy" the situation. In addition, we point out that because the legislature in § 8-12 gave the power to sanction to local zoning authorities, the challenged daily fine sanctions were intended to be civil rather than criminal in nature. See *State* v. *Duke*, supra, 48 Conn. App. 77. That is in contrast with a criminal penalty, which is the exclusive province of a court of law.

We now turn to the second step of our inquiry. Having found that the legislature intended the sanction as remedial, we must determine whether the " 'clearest proof' "; id., 75; has been shown that the statutory scheme is so punitive as to negate that intention. See *United States* v. *Ward*, supra, 448 U.S. 249. The civil sanction of $100 per day cannot be said to be "overwhelmingly disproportionate." *In re Shane P.*, 58 Conn. App. 244, 257, 754 A.2d 169 (2000). The claim of excessiveness finds support only in that the plaintiff himself allowed the

daily violation to continue for so many days that it reached approximately $108,000. The sanctions served to advance the enforcement of § 8-12 and are appropriately undertaken by the zoning authorities. It bears repeating here that the clear intent of the legislature in conferring the power to sanction on local zoning authorities is prima facie evidence that those daily fine sanctions are civil, and not criminal, in nature.

We find that in the circumstances of this case, there is little, if any, evidence let alone the required " 'clearest proof' "; *State* v. *Duke*, supra, 48 Conn. App. 75; that the civil sanctions imposed on the plaintiff can be said to be so punitive in form and effect as to render them criminal despite the legislature's clear intent to the contrary.

We conclude that the sanctions imposed on the plaintiff were intended by our legislature to be civil in nature and that the court did not abuse its discretion in imposing them.

The plaintiff further contends that if § 8-12 permits the imposition of civil fines at all, then the amount of the penalty cannot exceed $2500. To support his proposition, the plaintiff refers to the fourth sentence of § 8-12, which provides in relevant part: "Any person who, having been served with an order to discontinue any such violation, fails to comply with such order within ten days after service . . . shall be subject to a civil penalty not to exceed two thousand five hundred dollars . . . ."

We conclude that the fourth sentence of § 8-12 is not applicable to the issue before us in this branch of the case. That is so because the issue for determination is not, as the fourth sentence discloses, any failure to obey an order within ten days after its service on the plaintiff, but whether the court improperly ordered daily fines during the time of the existence of the zoning violations

involved.[27] In that context, the time period in which the fine of $100 per day was imposed was from June 29, 1987, to June 15, 1990. It seems to us that given the inapplicability of the fourth, fifth, sixth and seventh sentences of § 8-12 to our inquiry on the issue before us, the only temporal limit on daily fines capable of being imposed by the court in an injunction action, as this is, is the number of days that the court finds that the zoning violations have been in existence as set out in § 8-12. We are mindful that our Supreme Court's remand on the plaintiff's appeal directed the trial court "to impose such civil penalties pursuant to § 8-12 as the trial court may deem appropriate in the proper exercise of its discretion." *Gelinas* v. *West Hartford,* supra, 225 Conn. 593. Accordingly, the plaintiff's claim is without merit.

II

The plaintiff claims finally[28] that the court's imposition of the daily fines, which totaled approximately $108,000, when he previously had been convicted in a criminal proceeding for the allegedly "same" offense, violated the prohibition against double jeopardy as set out in the fifth amendment to the United States constitution.[29]

---

[27] The fifth and sixth sentences of General Statutes § 8-12 also are not involved because the challenged fines were not imposed as the result of a criminal prosecution.

[28] We include in our discussion of the plaintiff's claim so much of another claim that he makes, namely, whether the court improperly denied his motion of October 14, 1994, to set aside the judgment. The plaintiff requested in that motion that the court set aside its judgment of June 16, 1994, on the ground that it "violates the double jeopardy clause of the fifth amendment to the United States constitution and the excessive fines clause of the eighth amendment to the United States constitution." We will discuss the fifth amendment claim. We will not discuss the eighth amendment claim, as that claim has not been briefed. See *Czarnecki* v. *Plastics Liquidity Co.,* 179 Conn. 261, 262 n.1, 425 A.2d 1289 (1979); *Middletown Commercial Associates Ltd. Partnership* v. *Middletown,* 42 Conn. App. 426, 439 n.12, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996).

[29] The fifth amendment to the United States constitution provides in relevant part that "[n]o person shall . . . be subject for the same offense to

The United States Supreme Court has many times held that the double jeopardy clause protects against three abuses: A second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. See *State* v. *Hickam,* supra, 235 Conn. 617–18, citing *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). The plaintiff in his principal brief claims that "[o]nly the third double jeopardy protection, namely, protection against multiple punishments for the same offense is at issue in this case." Further, he claims that "[a] disproportionately large civil sanction imposed in a civil proceeding against a person who has already been punished criminally for the *same offense* constitutes 'punishment' within the meaning of the double jeopardy clause, regardless of the label placed upon the sanction . . . ." We do not agree that the plaintiff was punished twice for the "same offense," as he claims.

On February 15, 1991, in the geographical area number sixteen courthouse in West Hartford, the plaintiff entered a plea of nolo contendere to the charge of continuation of an unlawful use of property on April 16, 1990,[30] which was in violation of certain provisions of the state building code. The plaintiff was represented

be twice put in jeopardy of life or limb . . . ."

The double jeopardy protection of the fifth amendment is applicable to the states through the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *State* v. *McCall,* 187 Conn. 73, 89, 444 A.2d 896 (1982). Although our state constitution has no double jeopardy clause, our Supreme Court has stated that the prohibition against double jeopardy is implicit in our common law. *State* v. *Moeller,* 178 Conn. 67, 77, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 (1979).

[30] The plaintiff had been ordered by the town to abate the violative condition. Upon reinspection by the town on April 16, 1990, it was found that he had failed to do so. The charge to which he had entered a plea of nolo contendere was for that on April 16, 1990, after he had failed to abate the condition. On the basis of that charge, he was sentenced as discussed.

by counsel at the time of his plea and sentencing. During the proceedings, the prosecutor specifically described the areas of the premises involved in that criminal case. The attorney for the Housing Session of the Superior Court, in reciting the factual basis for the charge, stated that the plaintiff had continued the unlawful use[31] by "having altered the occupancy of the premises in a manner requiring greater strength, in that he constructed an additional floor of occupancy containing three separate offices and a stairway in the southernmost portion of the building without first filing a written application with the building official and the town, and obtaining a permit to do so." Although he was ordered by the town to abate that condition, the plaintiff failed to do so.

The criminal case against the plaintiff for the building code violations was disposed of on the basis of an agreed recommendation. Pursuant to the signed recommendation, the court, *Mulcahy, J.*, imposed a fine of $500 and waived costs. In addition, the court committed the plaintiff to the commissioner of correction for ninety days, execution suspended, and further sentenced him to a conditional discharge for one year. The court accepted the plaintiff's plea of nolo contendere, made a finding of guilty and fined him $500. In his brief to this court, the plaintiff maintains that at that time, he was convicted of violations of state building code §§ 103.2,[32]

---

[31] The transcript of the plea proceeding discloses that the prosecution, in setting out the recommended disposition, stated: "The condition of discharge [is] that at the building of 119 Park Road, West Hartford, the area, which is one floor above the ground and two floors above the basement level, consisting of three small offices located in the southernmost portion of the rear of the building, remain vacated and unused for the period of one year . . . until and unless the [plaintiff] receives a certificate of occupancy or a court order on the civil action [the pending mandamus action] permitting occupancy of that area."

[32] Section 103.2 of the state building code provides: "Change in use: It shall be unlawful to make any change in the use or occupancy of any structure or portion thereof which would subject it to any special provisions of this code without approval of the building official, and the building

111.1[33] and 119.2.[34]

To prevail on a double jeopardy claim relative to the prohibition against multiple punishments for the same offense, a defendant (here, the plaintiff) "bears the burden of demonstrating (1) that the charges arise out of the same act or transaction and (2) that the crimes are the same offense." *State* v. *Raymond*, 30 Conn. App. 606, 609, 621 A.2d 755 (1993). The town contends that the plaintiff has failed to fulfill the second requirement for qualifying for double jeopardy protection, that is, that the penalties imposed are for the "same offense."[35] The plaintiff argues that use of the *Blockburger* test;

official's certification that such structure meets the intent of the provisions of law governing building construction for the proposed new use and occupancy, and that such change does not result in any greater hazard to public safety or welfare."

[33] Section 111.1 of the state building code provides: "Permits Required. After October 1, 1970, no building or structure shall be constructed; altered; have its occupancy changed to one requiring greater strength, exit, or sanitary provisions; have its use changed; or have any equipment installed or altered for which provision is made, or the installation of which is regulated by this code, until an application has been filed with the building official and a permit issued."

[34] Section 119.2 of the state building code provides: "Buildings hereafter altered: A building or structure hereafter enlarged, extended or altered to change from one use group to another or to a different use within the same use group, in whole or in part, and a building or structure hereafter altered for which a certificate of use and occupancy has not been heretofore issued, shall not be occupied or used until the certificate shall have been issued by the building official, certifying that the work has been completed in accordance with the provisions of the approved permit. Any use or occupancy, which was not discontinued during the work of alteration, shall be discontinued within 30 days after the completion of the alteration unless the required certificate is secured from the building official."

[35] The town maintains that the plaintiff does not satisfy the first requirement for double jeopardy protection, that is, that the charges must arise out of the same act or transaction. See *State* v. *Palmer*, 206 Conn. 40, 52, 536 A.2d 936 (1988). We agree and conclude that the plaintiff has not satisfied the first requirement because his criminal conviction of February 14, 1991, was for his conduct on one day, i.e., April 16, 1990, whereas the civil fines imposed under General Statutes § 8-12 were for his zoning violations for a period extending from June 29, 1987, to June 15, 1990.

*Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); is relevant to the issue of whether the penalties constitute the "same offense," which *Blockburger* states depends on "whether each provision requires proof of a fact which the other does not." Id. As the town suggests, that means that in applying that calculus, both sets of "offenses" are considered as to whether they do, as the plaintiff maintains, constitute the "same offense" for double jeopardy purposes.[36]

Before proceeding further in the "same offense" issue, two observations are made. First, although *Blockburger* analysis is quite helpful in other contexts, especially when the components in the analysis are one "crime" being compared or analyzed with another "crime," we do not consider traditional *Blockburger* analysis appropriate in this case. We will, however, to resolve the "same offense" issue, compare the allegedly "same offenses" to determine if they are the "same offense" for double jeopardy purposes. Second, we do not accept the plaintiff's invitation to conduct a lesser included provision[37] analysis in our discussion of the

[36] Under the *Blockburger* test, "a defendant may be convicted of two offenses arising out of the same criminal incident if each crime contains an element not found in the other." *State* v. *Vass*, 191 Conn. 604, 615, 469 A.2d 767 (1983); see also *State* v. *Greco*, 216 Conn. 282, 291, 579 A.2d 84 (1990). We determine whether each crime contains an element not found in the other by examining only the relevant statute, the information and the bill of particulars, and not the evidence presented at trial. *State* v. *Greco*, supra, 291. In this case, we do not have two "crimes" to compare. In addition, we do not have the information and the bill of particulars (if any).

[37] Although the plaintiff gives us no authority for using a "lesser included" approach in this case, i.e., a criminal offense as a civil offense, his briefs to this court suggest that he is advancing a "lesser included crime." Such analysis is improper here. In *State* v. *Ruiz*, 171 Conn. 264, 368 A.2d 222 (1976), our Supreme Court stated: " 'The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense in the manner described in the information or bill of particulars, without having first committed the lesser. If it is possible, then the lesser violation is not an included crime.' " Id., 272; *State* v. *Blyden*, 165 Conn. 522, 529–30, 338 A.2d 484 (1973); *State* v.

"same offense" issues in which he asks us to compare those sections of the building code on which he was presented and pleaded to criminally to with what he states are substantially the same (in two instances) as West Hartford zoning code provisions.

The plaintiff, in his principal brief, admits that he was convicted after being found guilty in the geographical area number sixteen courthouse in West Hartford "of violating state building code section 103.2 . . . section 111.1 . . . [and] section 119.2 . . . ." In the case before us, he has been fined under the provisions of § 8-12, a state statute. It is fair to say that the town's zoning code and the state building code embody separate and distinct sets of rules. Further, while the plaintiff's unauthorized use[38] of his Park Road property forms, in broad terms, the underlying basis for both his criminal building code conviction and the zoning enforcement action for his zoning violations under § 8-12, each set of those violations is separate and distinct from the other. The criminal case involved the plaintiff's conduct on one day, i.e., April 16, 1990. The civil penalties imposed under the zoning enforcement statute, § 8-12, on a daily basis addressed the period of violations from June 27, 1987, to June 15, 1990.

Comparing § 8-12 to the specific sections of the building code under which the plaintiff was convicted does not support his claim that he was convicted of the "same offense." Building code § 103.2 does not apply to zoning issues, but rather to obtaining the approval and certifi-

_Brown_, 163 Conn. 52, 61–62, 301 A.2d 547 (1972). We will not undertake such an analysis.

[38] The Supreme Court, in discussing certain actions of the plaintiff, stated: "A review of the record discloses that the equities in this case patently lie with the town. The record clearly reveals that [the plaintiff] installed commercial ventures in the basement of the subject building knowing full well that he was flagrantly violating the West Hartford zoning ordinances." _Gelinas_ v. _West Hartford_, supra, 225 Conn. 596.

cation of the building official for matters set out in that section. Section 111.1 again sets out when the approval of the building official will be needed before a permit is issued in cases involving the construction or alteration of a building or structure or a change in its occupancy. It does not discuss zoning issues. Section 119.2 involves changes in a building or structure for which a certificate of occupancy issued by the building official is required to assure that changes have been made in accordance with the provision of the approved building permit.

*State* v. *Woodson*, 227 Conn. 1, 629 A.2d 386 (1993), offers us some guidance on this issue. Although *Woodson* involved two criminal statutes, it held that "[u]ltimately, whether statutory provisions are separate crimes meriting separate punishments for the purpose of double jeopardy analysis turns on whether the legislature intended them to be separate crimes." Id., 12. It is quite clear that the drafters of § 8-12 intended that it apply to the enforcement of zoning violations and that the drafters of the building code, and specifically the three provisions involved, intended them to apply to the procedure necessary to conform with those building code requirements set out in each. Those building code provisions do not apply to zoning violations and, conversely, § 8-12 does not provide for the enforcement of building code violations.

Finally, we observe that the plaintiff relies on *United States* v. *Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), to support his claim that the court's order imposing the daily fines pursuant to § 8-12 subjected him to double jeopardy. In *Halper*, the defendant was convicted of sixty-five separate violations of the federal criminal false claim statute, 18 U.S.C. § 287. *United States* v. *Halper*, supra, 437. Upon conviction, the defendant was sentenced to two years imprison-

ment and fined $5000.[39] Id. Later, the government filed a separate civil action against the defendant in an attempt to recover a $2000 penalty for each violation. Id., 438. Thus, the government tried to recover $130,000 from the defendant. Id. In *Halper*, the issue presented to the United States Supreme Court was a narrow one. It was "whether the attempted imposition of the civil fines against [the defendant] by the government, following his criminal prosecution and punishment for the same underlying misconduct, violated the double jeopardy clause." *State* v. *Hickam*, supra, 235 Conn. 619.

In interpreting *Halper*, our Supreme Court in *Hickam* stated: "The court determined that the imposition of the full amount of the sought after monetary penalties would constitute punishment. It explicitly held that 'under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution.' " (Emphasis in original.) Id. "The court recognized the difficulty in conducting this inquiry and indicated that a violation of the double jeopardy clause 'can be identified only by assessing the character of the actual [sanctions] imposed on the individual by the machinery of the state.' " Id.

"In holding that the civil penalty authorized by the statute was so disproportionate to the offense as to have violated the constitutional prohibition against multiple punishments, the court announced that this is 'a rule for the rare case . . . where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanc-

---

[39] In *United States* v. *Halper*, supra, 490 U.S. 437, the basis of each violation was that the defendant had billed medicare for reimbursement at a rate of $12 per claim for medical services worth only $3 per claim. The actual damage to the government as the result of the defendant's scheme was $585. Id.

tion overwhelmingly disproportionate to the damages he has caused.' . . . The court then remanded the case to the trial court in order to allow the government an opportunity to demonstrate its losses and costs because it had not previously challenged the assessment of damages." (Citation omitted.) Id. The *Hickam* court further stated: "Accordingly, after a review of *Halper* and its interpretation by other jurisdictions, we conclude that *Halper* stands for the proposition that a civil or administrative sanction that serves a legitimate remedial purpose and is related rationally to that purpose does not give rise to a double jeopardy violation even if the sanction has some deterrent effect. Conversely, no matter what its label, a sanction or portion thereof that seeks only to punish triggers the protection of the double jeopardy clause." Id., 623.

Drawing on *Hickam*, our Supreme Court later, in discussing which sanctions are to be considered "punishments" for double jeopardy purposes, required that "we assess: (1) the purpose the sanction is designed to serve; and (2) the nature of the particular sanction as applied to the [offender]. A sanction that primarily serves a legitimate remedial purpose and is related rationally to that purpose does not give rise to a double jeopardy violation." *State* v. *Tuchman*, supra, 242 Conn. 352.

We point out that *Halper* is significantly different factually from this case. In *Halper*, the government's civil action, which was brought after the defendant's criminal conviction, was based on precisely the same offenses for which he had been convicted in the criminal case. That is not so here. Here, the plaintiff claims that because of his criminal conviction on February 16, 1991, for the building code violation (to which he entered a plea of nolo contendere) of continuing the unlawful use of three second floor rooms at 119 Park Road on a specific date—April 16, 1990, and the court's subse-

quent imposition of the civil fines for violating (on a daily basis) the zoning code for almost three years on all three floors (two floors and the basement), constitutes multiple punishments for the same offense and thereby is prohibited by the double jeopardy clause. We cannot agree.

In disagreeing with the plaintiff's position here, we reiterate that the conduct forming the basis for his conviction, after his plea, for a one day violation of the building code, did not constitute the basis for the civil court's decision to impose the fines for the zoning code violations. In the criminal court, the prosecutor brought the charge for the illegal office use of the second floor rooms to which we have referred. On the other hand, the zoning enforcement officer was trying to have the illegal first floor wall removed, and the office use in the basement and in the three first floor rooms discontinued.

Furthermore, *Halper* is distinguishable because in this case there was no evidence before the trial court of the expenses incurred by the town in pursuing the violations from June, 1987, until January 4, 1995, the date when the court denied the plaintiff's motion to set aside its June 16, 1994 judgment. Here, we note the plaintiff's allusion in his principal brief to "the government's expenses of $6000 plus taxable costs" as constituting a second punishment in violation of the double jeopardy clause. The $6000 referred to actually was attorney's fees allowed to the town and, as previously stated, is not at issue in this appeal.

Further, we cannot overlook the language in *Halper* that clearly states that "[n]othing in today's ruling precludes the Government from seeking the full civil penalty against a defendant who previously has not been punished for the same conduct, even if the civil sanction imposed is punitive. In such a case, the Double Jeopardy

Clause simply is not implicated." *United States* v. *Halper*, supra, 490 U.S. 450. Although we hold to our already stated view that the civil penalty imposed on the plaintiff is one that is remedial, the amount of the fine, some $108,000, does not violate the double jeopardy clause when we consider that it consisted of a daily fine for violations that persisted for some 1080 days without respite. The daily fine of $100 per day is reasonable; the persistence in the violative conduct for 1080 days is not. Such a fine, in the aggregate, serves a legitimate, remedial purpose, is related rationally to that purpose and does not give rise to a double jeopardy violation.

The judgment is affirmed.

In this opinion the other judges concurred.